1
2
3
4
5
6
7
8
9
10
11
12
13

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ANTONIA RODRIGUEZ-CASTRO,          )
                                   )
                      Plaintiff,   )     Case No. 2:13-cv-00826-GMN-GWF
                                   )
vs.                                )     **FINDINGS AND**
                                   )     **RECOMMENDATION**
SOCIAL SECURITY ADMINISTRATION,    )
                                   )     Motion to Remand (#18)
                      Defendant.   )
_____)

14      This matter is before the Court on Plaintiff Antonia Rodriguez Castro's Complaint for

15   Review of Final Decision of the Commissioner of Social Security (#3), filed on May 17, 2013.  The

16   Acting Commissioner filed her Answer (#15) on August 26, 2013.  Plaintiff filed her Motion for

17   Reversal and Remand (#18) on September 25, 2013.  The Acting Commissioner filed her Cross

18   Motion to Affirm and Opposition to Plaintiff's Motion for Remand (#23) on December 19, 2013.

19   Plaintiff filed her Reply Brief (#25) on January 9, 2014.

20                                      **BACKGROUND**

21      Plaintiff seeks judicial review of Administrative Law Judge Michael B. Kennett's ("ALJ")

22   decision dated February 24, 2012.  *See* Administrative Record ("A.R.") 19-26.  The issue before

23   the Court is whether the ALJ erred at step four of his analysis by failing to articulate specific and

24   legitimate reasons for rejecting the opinion of a consultative examiner's assessment when

25   determining Plaintiff's residual functional capacity ("RFC").  Also before the Court is whether the

26   ALJ erred at step four of his analysis because there was insufficient vocational testimony to

27   determine whether Plaintiff's past relevant work could be performed by an individual that requires

28   a cane.

### A.     Procedural History

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on October 1, 2009. *See* Administrative Record ("A.R.") 19.  She also filed a Title XVI application for supplemental security income on February 18, 2011.  A.R. 19.  Plaintiff alleged disability beginning April 5, 2009 in both applications.  *Id*.  The Title II claim was denied, initially, and upon administrative reconsideration.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared and testified through a Spanish interpreter, Luis Tamargo, at a hearing held on June 28, 2011 before ALJ Michael D. Kennett.  A.R. 33.  Plaintiff was represented by Robert Fleming, an attorney.  A.R. 19.  ALJ Kennett issued his decision on February 24, 2012 and concluded that Plaintiff was not disabled from April 5, 2009 through the date of the decision.  *Id*.  Plaintiff timely filed a Request for Review, which was denied by the Appeals Council on February 19, 2013.  A.R. 1.  When the Appeals Council declined to review the ALJ's decision, the decision became final.  *Id*.  Plaintiff then filed this action for judicial review pursuant to 42 U.S.C. 405(g).  This matter has been referred to the undersigned for a report of findings and recommendations under 28 U.S.C. §§ 636 (b)(1)(B) and (C).

### B.     Factual Background

Plaintiff Antonia Rodriguez Castro was born in Mexico on July 27, 1962.  A.R. 35.  She was 48 years old at the time of the hearing on June 28, 2011.  She completed the sixth grade in Mexico.  A.R. 35, 163.  In 1987, she moved to the United States.  *Id*.  She has had no formal education in the United States and speaks very little English.  A.R. 200.  She is married with three grown children.  A.R. 347.  Her past relevant work included food packager, fruit sorter/packager, electronics assembler, and packing flyers.  A.R. 200.  She last worked in May 2009 as a gift wrapper for Bed Bath & Beyond - Warehouse Distribution Center.  A.R. 37, 157.  Plaintiff is 5'3" and weighed 150 pounds at the time of the hearing.  A.R. 38.  Plaintiff indicated that she has a driver's license, but has been unable to drive since 2009 due to her inability to turn the steering wheel.  A.R. 41.  She testified that she is unable to perform her previous work as a "gift basket preparer" due to her inability to maneuver her wrists and fingers.  A.R. 43.  She also alleged she is unable to grasp things which prevents her from cleaning dishes.  A.R. 43.

Plaintiff alleged disability due to right wrist and elbow strain.  A.R. 157.  On July 5, 2008, Plaintiff injured her right arm at work while lifting a box.  A.R. 200, 301.  She was examined by Dr. Witt on July 7, 2008.  A.R. 316.  He indicated there was no swelling but noted navicular tenderness at the wrist and tenderness in the right elbow.  *Id*.  Plaintiff was assessed with a wrist and elbow strain and was prescribed a sling and Motrin 800.  *Id.*  She was scheduled for a follow-up appointment and was instructed to limit the use of her right arm.  *Id*.

On July 14, 2008, Plaintiff presented with Dr. Witt for her follow-up examination.  A.R. 315.  She indicated she was using the brace and was working light duty.  She was assessed with wrist strain and prescribed physical therapy three to four times a week to determine if she would benefit from treatment.  *Id*.  Ms. Castro underwent six physical therapy sessions.  A.R. 305.  She then presented to Dr. Nickman on August 1, 2008.  *Id*.  Dr. Nickman noted that Plaintiff was not working and indicated that "most of her pain is over shoulder, dull-sharp, aggravated by certain movements."  *Id.*  He also noted Plaintiff denied any significant elbow and wrist pain.  *Id*.  He assessed Plaintiff with right upper extremity strain.  *Id.*  She continued with physical therapy.

On September 4, 2008, Plaintiff presented to Dr. Trainor for her right shoulder pain.  A.R. 301.  He indicated she had full range of motion that was equal to her left shoulder, however, she reported pain with abduction greater than 90 degrees.  *Id*.  She had 4/5 rotator cuff strength on the right side compared to the left.  A.R. 301.  She had a positive Neer's and Hawkins sign, she was otherwise neurovascularly intact distally.  *Id*.  Dr. Trainor diagnosed Plaintiff with a right shoulder rotator cuff tear with subacromial impingement syndrome.  He gave Plaintiff a corticosteroid injection and scheduled her for an MRI to confirm the diagnosis.  *Id*.

On September 11, 2008, Dr. Trainor followed up with Plaintiff for right shoulder rotator cuff tendinitis, subacromial space impingement syndrome, and a possible rotator cuff tear.  A.R. 299.  He described Ms. Castro as a "well-appearing female in no acute distress."  *Id*.  Plaintiff presented her MRI results from MRI of Las Vegas.  The results demonstrated partial-thickness rotator cuff tear as well as type 2 acromion.  A.R. 385.  He recommended a second steroid injection for transient relief and discussed the possible need for arthroscopic intervention if Plaintiff did not improve.  A.R. 299-300.  He stated, "[t]he patient should remain on light duty until her next

1    followup.  She should not lift anything greater than 20 pounds.  She should not be reaching above

2    her shoulder lever.  She may do a sedentary desk job without any restrictions."  A.R. 300.

3        On November 24, 2008, Ms. Castro was admitted to Centennial Hills Medical Center for

4    right shoulder arthroscopy with subacromial decompression and rotator cuff repair as well as SLAP

5    repair.  A.R. 385.  Dr. Trainor completed the procedure and recommended Plaintiff begin passive

6    range of motion immediately with a physical therapist.  *Id.*  He estimated the total recovery period

7    to last between four and six months.  *Id.*

8        Plaintiff was referred to Dr. Mashhood on March 30, 2009 for a post operation progress

9    report.  A.R. 394.  He noted Plaintiff's muscle strength to be 5/5 throughout except for the right

10   shoulder abduction and flexion which was 4-/5.  A.R. 396.  He indicated Ms. Castro is "just

11   symptomatic" stating that "postoperatively, there is no significant change with her symptomatology

12   and [she] continues to experience right shoulder pain and stiffness."  A.R. 394.  He recommended

13   Plaintiff finish physical therapy and transition herself to home exercises.  He released her to return

14   to work with limitations including maximum lifting of 20 pounds and avoidance of reaching

15   overhead.  *Id.*  He scheduled a follow-up appointment on April 13, 2009, and indicated that if she

16   was not ready to return to work in full-duty capacity, he would request a functional capacity

17   evaluation.  *Id.*

18       On March 31, 2009, Plaintiff presented to Dr. Trainor for a post arthroscopic rotator cuff

19   repair operation examination.  A.R. 324.  Dr. Trainor noted Plaintiff had 4+/5 rotator cuff strength,

20   a negative drop arm exam, and a full abduction and forward flexion that was equal to her normal

21   left side.  A.R. 324.  He indicated that he believed Plaintiff had reached her "maximum medical

22   improvement at this point" and recommended she return to full work without restrictions.  A.R.

23   324.  Dr. Trainor stated, "[s]he is stable and ratable at this point and I would recommend she obtain

24   a rating."  *Id.*

25        Ms. Castro presented for her follow-up examination with Dr. Mashhood on April 15, 2009.

26   A.R. 391.  He indicated that Plaintiff completed her four months of physical therapy and was

27   working light duty.  *Id.*  Plaintiff complained of weakness of her right upper extremity and left

28   shoulder pain.  *Id.*  He found Plaintiff had normal gait, normal left shoulder range of motion, and

4

right shoulder range of motion at 140 abduction and flexion, and 40 degrees internal and external

rotation.  *Id.*  Her neurological examination showed 4/5 muscle strength and 1+ reflexes.  *Id.*  Dr.

Mashhood referred Plaintiff for a functional capacity evaluation.  A.R. 392.

On April 24, 2009, Plaintiff presented to Robert Wolinsky, P.T. for her functional capacity

assessment.  A.R. 421.  Throughout the exam, Ms. Castro was observed utilizing poor body

mechanics and thoracic posture.  He concluded,

> [i]t is unfortunate that Ms. Rodriguez-Castro did not give consistent
> effort that would have lead to valid test results.  We are therefore
> unable to accurately place her into a physical demand category.  She
> may very well possess higher physical capabilities than were
> demonstrated today.  Therefore, unless there is any medical evidence
> to the contrary, we recommend that she be returned to her pre-
> accidental job position as soon as possible.  The longer she thinks
> and acts below her potential, the more difficult it will be to
> successfully return her to full duty.

A.R. 421.

Dr. Mashhood reviewed the results of the functional capacity assessment with Plaintiff on

April 28, 2009.  A.R. 388.  He stated:

> Given the fact that the patient has required right shoulder surgery
> repair and debridement of rotator cuff and labrum and the fact that
> the objective findings are consistent of tenderness and restricted
> range of motion of right shoulder as well as weakness of right
> shoulder muscles, I believe that the patient based on my clinical
> evaluation should follow some restrictions.  After further discussion
> with the patient, I elected to release the patient to return to work with
> permanent restrictions including maximum lifting of 35 pounds and
> avoidance of reaching overhead and on the right side.  I have
> discharged the patient from my care and consider her permanent,
> stationary, and medically stable.  The patient needs impairment
> evaluation.

A.R. 389.

On December 4, 2009, Plaintiff was examined by Dr. Middleton for joint pain.  A.R. 399.

Plaintiff reported that a year prior she had problems with her joints hurting, but it went away.  She

indicated that five months ago the pain returned.  Plaintiff described herself as "fragile" and

indicated she has a lot of pain and swelling in her right wrist and left ankle.  *Id.*  She reported that

Oxaprozin and hydrocodone have helped.  *Id.*  Examination of Ms. Castro indicated slight

inflammatory arthritis in the right wrist and left ankle, but otherwise no evidence of any active

inflammatory arthritis was present.  *Id.*  There was no evidence of any tenderness along the right

first metatarsal.  *Id.*  Dr. Middleton indicated his findings were suggestive of rheumatoid arthritis,

but physical findings were not confirmatory.  A.R. 400.  Plaintiff was evaluated again by Dr.

Middleton on January 29, 2010.  He indicated that Plaintiff had "seropositive rheumatoid arthritis

which continues with active disease early on with treatment with Methotrexate."  A.R. 451.  He

prescribed hydrocodone and methotrexate.  A.R. 336.

On April 6, 2010, Dr. Sherman examined the Plaintiff.  He noted that Ms. Castro "enter[ed]

the examining room with a normal gait using no cane, brace or assistive device to ambulate.  She

lift[ed] her purse with her right hand, gesticulate[d] with both arms and hands without difficulty

and shrug[ged] out of her shirt in an easy fashion."  A.R. 347.  Dr. Sherman indicated that, despite

her claims of weakness of grip and clumsiness, Ms. Castro could easily make a fist with her right

hand and did not complain when using the Jamar dynamometer.  A.R. 347, 348.  He concluded that

Plaintiff had complaints of pain in her right shoulder, elbow, wrist and hand, but was without

mechanical deficit.  A.R. 348-349.  He opined that Plaintiff could sit, stand and walk for six hours

during the course of an eight-hour workday and did not require a cane, brace or assistive device to

ambulate.  She could frequently lift 20 pounds and occasionally lift 40 pounds.  She had no

restriction regarding forward bending at waist, squatting, kneeling, or crawling.  She should not be

required to do frequent overhead reaching with the right arm.  She was otherwise unrestricted

regarding use of the arms and hands for reaching, pushing, pulling, grasping, and fine manipulation

activities with the hands.  A.R. 349.

Dr. Toth completed a Physical Residual Functional Capacity Assessment of Plaintiff on

July 28, 2010.  A.R. 358-365.  Dr. Toth determined that Plaintiff could frequently lift 10 pounds,

stand or walk six hours and sit six hours in an eight-hour workday.  A.R. 359.  Dr. Toth also found

Plaintiff to be only partially credible stating that a "CE vendor noted manipulative behavior

04/06/2010."  A.R. 363.

On September 30, 2011, after the hearing before the ALJ, Ms. Castro was referred for an

orthopedic Social Security evaluation with Dr. Cestkowski.  A.R. 451.  He observed that Plaintiff

ambulated with a "slow hesitant gait" to the examining room with use of a walker and had mild

difficulty arising from the examining table to the floor. A.R. 453. Plaintiff indicated that she had

constant pain in the MP joints of both hands as well as pain in both arms, elbows, knees, ankles,

shoulders, neck, and lower back. *Id.* Plaintiff stated that at its best with medication, her pain is a 5

and at its worse, is a 10 on the visual analog scale. *Id.* She indicated that she was not able to

ascend one or two stairs due to knee and ankle pain. *Id.* Plaintiff's examination was limited to the

orthopedic system with corresponding neurological evaluation. *Id.* Dr. Cestkowski noted that

"[t]he patient in my opinion did not put forward a full cooperative effort for this evaluation based

on clinical experience." A.R. 452. He further indicated that Ms. Castro did not appear to be in

acute distress throughout the evaluation process. *Id.* Dr. Cestkowski stated:

> She complained of pain as I palpated the right and left paracervial
> and trapezius muscles as well as the thoracic and lumbar areas. No
> significant spasm or guarding was present however. No cervical,
> thoracic, or lumbosacral spinous process tenderness was present.
> Spurling's sign was negative. She complained of pain as I palpated
> both shoulders. There was surgical scarring present over the right
> shoulder. There was no evidence of joint crepitation, impingement,
> or rotator cuff instability in either shoulder. Passive and active
> movement of each shoulder caused increased pain. She complained
> of pain as I palpated both elbows but there was no evidence of
> effusion, joint crepitation, joint deformity, or instability. She
> complained of pain as I palpated either hand or wrist. In addition
> there were no bone or joint deformities identified. There was no
> swelling present in the orthopedic joints of the upper extremities.
> She was able to do digital dexterity with both hands but did that very
> slowly. She could make a fist with both hands.

A.R. 452-453. Examination of Plaintiff revealed no upper extremity atrophy and no evidence of

right or left upper extremity chronic regional pain syndrome. Her bilateral upper and lower

extremity and  motor examinations were graded 5/5. A.R. 453. Dr. Cestkowski assessed Plaintiff

as being able to lift and carry up to ten pounds frequently, sit for four hours in an eight-hour

workday, and stand and walk up to two hours in an eight-hour workday. A.R. 458. He indicated,

however, that his assessment of her limitations was difficult due to her lack of cooperation. A.R.

454.

**C.    ALJ's Decision**

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security

Act from April 5, 2009, through the date of his decision. A.R. 19. The ALJ found that Plaintiff

possessed sufficient residual functional capacity ("RFC") to perform less than a full range of light

work as defined in 20 C.F.R. 404.1567(b) and 416.967(b).  A.R. 22.  In reaching this conclusion,

the ALJ followed the five-step process set forth in 20 C.F.R. § 404.1520(a)-(f).  First, the ALJ

found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date,

April 5, 2009.  A.R. 21.  Second, he found that Plaintiff had a severe impairment in the form of

rheumatoid arthritis and status-post right shoulder rotator cuff repair.  *Id*.  At step three of his

analysis, the ALJ concluded that Plaintiff's impairment or combination of impairments did not

meet or equal one of the listed impairments in  20 C.F.R. § 404, Subpt. P, Appx. 1.  A.R. 22.  In

support of this finding, the ALJ stated that the medical and non-medical evidence of record did not

set forth any credible findings equivalent in severity to the criteria of any listed impairment.  A.R.

22.  The ALJ also considered the four broad functional areas set out in the disability regulations for

evaluating mental disorders.  The ALJ stated:

> Because the claimant's mental impairment [did] not cause at least
> two "marked" limitations or one "marked" limitation and "repeated"
> episodes of decompensation, each of extended duration, the
> "paragraph B" criteria are not satisfied. The "C" criteria are not met
> since there are no repeated episodes of decompensation of extended
> duration; or marginal adjustment such that minimal increase in
> mental demands or change of environment would cause
> decompensation; or current history of one-or-more years of inability
> to function outside of a highly supportive living arrangement.

A.R.  22.

At step four of his analysis, the ALJ found that Plaintiff had the residual functional capacity

to perform less than full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b).

Specifically, ALJ Kennett found that Plaintiff could lift and/or carry ten pounds frequently and

twenty pounds occasionally.  A.R. 22.  She could sit, stand and/or walk for six hours out of an

eight-hour workday.  *Id*.  Furthermore, she could occasionally reach overhead with the right upper

extremity.  *Id*.  The ALJ also found that Plaintiff was limited to unskilled jobs.  *Id*.

In determining Plaintiff's residual functional capacity ("RFC"), ALJ Kennett considered the

entire record as a whole and found that "claimant's activity level, objective clinical diagnostic

findings, and treatment records support finding the claimant not disabled."  A.R. 25.  In making this

determination, he gave significant weight to the recheck injury flow sheet and disability progress

1   reports, which limited the Plaintiff to no lifting over twenty pounds and reaching above the

2   shoulder.  He gave great weight to the RFC evaluation completed by Robert Wolinsky, P.T., who

3   indicated that Plaintiff did not give consistent effort and limited her to occasional right arm

4   reaching above shoulder level, squatting, kneeling and crawling.  A.R. 25.  He also gave great

5   weight to the opinion of  Dr. Sherman, which the ALJ summarized as recommending light

6   limitations.  *Id.*  He also considered and gave great weight to Dr. Cestkowski, who indicated that

7   Plaintiff did not "put forth a full cooperative effort," but found light limitations.  A.R. 25.

8       At step four, the ALJ found that the Plaintiff was capable of performing her past relevant

9   work as a gift wrapper.  A.R. 26.  In support of this finding, the ALJ relied on Plaintiff's

10  description of her past relevant work demands in which she indicated that she did not lift anything,

11  and would stand, crouch, crawl, reach, write, type or handle small objects.  A.R. 26.  In comparing

12  the Plaintiff's RFC with the physical and mental demands of her past relevant work, ALJ Kennett

13  found that the Plaintiff could perform her past relevant work as actually performed.  *Id.*

## DISCUSSION

14

15  **I.       Standard of Review**

16      A federal court's review of an ALJ's decision is limited to determining only (1) whether the

17  ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the proper

18  legal standards.  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan,* 924

19  F.2d 841, 846 (9th Cir. 1991).  The Ninth Circuit has defined substantial evidence as "more than a

20  mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

21  might accept as adequate to support a conclusion."  *Woish v. Apfel*, 2000 WL 1175584 (N.D. Cal.

22  2000) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Lewis v. Apfel*,

23  236 F.3d 503 (9th Cir. 2001).  The Court must look to the record as a whole and consider both

24  adverse and supporting evidence.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Where the

25  factual findings of the Commissioner of Social Security are supported by substantial evidence, the

26  District Court must accept them as conclusive.  42 U.S.C. § 405(g).  Hence, where the evidence

27  may be open to more than one rational interpretation, the Court is required to uphold the decision.

28  *Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) (*quoting Gallant v. Heckler*, 753 F.2d 1450,

1453 (9th Cir. 1984)).  *See also Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court

may not substitute its judgment for that of the ALJ if the evidence can reasonably support reversal

or affirmation of the ALJ's decision.  *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453,

1457 (9th Cir. 1995).

It is incumbent on the ALJ to make specific findings so that the court need not speculate as

to the findings.  *Lewin*, 654 F.2d at 635 (citing *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir.

1974)).  In order to enable the court to properly determine whether the Commissioner's decision is

supported by substantial evidence, the ALJ's findings "should be as comprehensive and analytical

as feasible and, where appropriate, should include a statement of subordinate factual foundations on

which the ultimate factual conclusions are based."  *Lewin*, 654 F.2d at 635.

In reviewing the administrative decision, the District Court has the power to enter "a

judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,

with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In the alternative, the

District Court "may at any time order additional evidence to be taken before the Commissioner of

Social Security, but only upon a showing that there is new evidence which is material and that there

is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  *Id.*

## II.    Disability Evaluation Process

To qualify for disability benefits under the Social Security Act, a claimant must show that:

> (a)   he/she suffers from a medically determinable physical or mental
> impairment that can be expected to result in death or that has lasted
> or can be expected to last for a continuous period of not less that
> twelve months; and
>
> (b)   the impairment renders the claimant incapable of performing the
> work that the claimant previously performed and incapable of
> performing any other substantial gainful employment that exists in
> the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A).

The claimant has the initial burden of proving disability.  *Roberts v. Shalala*, 66 F.3d 179,

182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996).  To meet this burden, a claimant must

demonstrate an "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected . . . to last for a continuous

10

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  If the claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy.  *Batson*, 157 F.3d at 721.

### III.    Analysis of the Plaintiff's Alleged Disability

Social Security disability claims are evaluated under a five-step sequential evaluation procedure.  *See* 20 C.F.R. § 404.1520(a)-(f).  *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  The claimant carries the burden with respect to steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If a claimant is found to be disabled, or not disabled, at any point during the process, then no further assessment is necessary.  20 C.F.R. § 404.1520(a).  Under the first step, the Secretary determines whether a claimant is currently engaged in substantial gainful activity.  *Id.* § 416.920(b).  If so, the claimant is not considered disabled.  *Id.* § 404.1520(b). Second, the Secretary determines whether the claimant's impairment is severe.  *Id.* § 416.920(c).  If the impairment is not severe, the claimant is not considered disabled.  *Id*. § 404.152(c).  Third, the claimant's impairment is compared to the "List of Impairments" found at 20 C.F.R. § 404, Subpt. P, App. 1.  The claimant will be found disabled if the claimant's impairment meets or equals a listed impairment.  *Id.* § 404.1520(d).  If a listed impairment is not met or equaled, the fourth inquiry is whether the claimant can perform past relevant work.  *Id*. § 416.920(e).  If the claimant can engage in past relevant work, then no disability exists.  *Id.* § 404.1520(e).  If the claimant cannot perform past relevant work, the Secretary has the burden to prove the fifth and final step by demonstrating that the claimant is able to perform other kinds of work.  *Id.* § 404.1520(f).  If the Secretary cannot meet his or her burden, the claimant is entitled to disability benefits.  *Id.* § 404.1520(a).

Plaintiff asserts that the ALJ erred at step four of his analysis when determining her residual functional capacity ("RFC").  Plaintiff also argues that the ALJ erred at step four because there was insufficient vocational testimony to determine whether Plaintiff's past relevant work could be performed by an individual who requires the use of a cane.

. . .

11

1

**A.    The ALJ applied the appropriate legal standard in determining Plaintiff's RFC**
2         **at step four of his analysis and his decision is supported by substantial evidence**
          **in the record.**

3         Before deciding whether a claimant is able to perform her past relevant work, the ALJ must

4    determine the claimant's RFC.  *See* 20 CFR 404.1520(e) and 416.920(e).  Residual Functional

5    Capacity is the most a claimant can still do despite her limitations, and is based on all of the

6    relevant evidence in the case record.  *See* 20 C.F.R. §§ 404.1546(c), 416.946(c).  In making the

7    RFC determination, the ALJ takes into account those limitations for which there is record support

8    that does not depend on properly rejected evidence and subjective complaints.  *See Batson v.*

9    *Comm'r*, 359 F.3d 1190, 1197 (9th Cir. 2003); *Baylissv. Barnhart*, 427 F.3d 1211, 1217 (9th Cir.

10   2005).  The Court will affirm the ALJ's determination of the claimant's RFC if the ALJ applied the

11   proper legal standard and his decision is supported by substantial evidence.  *See Morgan v.*

12   *Commissioner of Social Sec. Admin*, 169 F.3d 595, 599 (9th Cir. 1999).

13         In determining Plaintiff's RFC, ALJ Kennett gave great weight to Dr. Cestkowski's

14   opinion, however, he did not adopt all of Dr. Cestkowski's limitations.  Plaintiff argues that the

15   ALJ failed to provide specific and legitimate reasons for rejecting some of the limitations

16   recommended by Dr. Cestkowski.  She argues that the ALJ incorrectly summarized Dr.

17   Cestkowski's assessed limitations, which indicates that the ALJ failed to properly consider the

18   doctor's opinion.  She also argues that the ALJ failed to consider the worsening of Plaintiff's

19   condition by refusing to adopt certain portions of Dr. Cestkowski's opinion.

20         When there are conflicts between the opinions of treating and examining doctors, it is the

21   ALJ's job to resolve the conflicts.  *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *See*

22   *also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (It is clear that it is the responsibility

23   of the ALJ, not the claimant's physician, to determine residual functional capacity).  If a treating or

24   examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it

25   by providing specific and legitimate reasons that are supported by substantial evidence.  *See Lester*

26   *v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995).  The ALJ can meet this burden by setting out a detailed

27   and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

28   thereof, and making findings.  *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  An ALJ

1   need not specifically recite that he rejected a physician's opinion for enumerated reasons. *See*

2   *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (Holding that an ALJ judge need not cite

3   the magic words, "I reject the physician's opinion because..."). Rather, a reviewing court may read

4   the findings and opinion and draw specific and legitimate inferences. *Id*. Furthermore, an ALJ

5   need not agree with everything contained in a medical opinion and can consider some portions less

6   significant than others when evaluated against other evidence in the record. *See Magallanes v.*

7   *Bowen,* 881 F.2d 747, 753 (9th Cir. 1989)

8       In determining Plaintiff's RFC, ALJ Kennett set out a detailed and thorough summary of

9   the facts noting the conflicting clinical evidence. A.R. 22-26. He noted that Dr. Trainor limited the

10  claimant to lifting twenty pounds and reaching above the shoulder. A.R. 25. Dr. Mashhood

11  permanently restricted Plaintiff to maximum lifting of 35 pounds and avoiding reaching overhead

12  on the right side. *Id*. The ALJ noted that, despite Dr. Wolisky's findings that Plaintiff did not give

13  consistent effort that would lead to accurate test results, he limited her to occasional right arm

14  reaching above shoulder level, squatting, kneeling and crawling. *Id*. The ALJ also noted that Dr.

15  Wolinsky recommended Plaintiff be returned to her pre-accident job position as soon as possible

16  stating, "the longer she thinks and acts below her potential, the more difficult it will be to

17  successfully return her to full duty." *Id*. The ALJ further noted that Dr. Cestkowski assessed "light

18  limitations". *Id*.

19      Plaintiff alleges that ALJ Kennett's use of the words "light limitations" in summarizing the

20  doctor's opinion implies that the ALJ did not consider the limitations proffered by Dr. Cestkowski

21  that fell below the regulations' definition of light work. Based on the ALJ's RFC assessment,

22  however, there is no indication that he did not consider limitations that fell below the definition of

23  light work. The ALJ found that Plaintiff had the ability to perform less than a full range of light

24  work as defined in CFR 404.1567(b) and 416.967(b), therein adopting Dr. Cestkowski's findings

25  that Plaintiff had the ability to lift and carry up to 10 pounds frequently and 20 pounds occasionally,

26  with limited overhead reaching. The regulations define light work as "lifting no more than 20

27  pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *See* 20

28  C.F.R. 404.1567(b). By also restricting Plaintiff to limited overhead reaching, the ALJ's RFC

assessment shows that he considered Dr. Cestkowski's assessed limitations that were more severe

than the regulations' definition of light work.  Furthermore, the ALJ summarized Dr. Cestkowski's

medical assessment.  Specifically, the ALJ noted that Dr. Cestkowski assessed Plaintiff with,

> complaints of pain in her shoulders, elbows, hands, knees and ankles;
> cervical/trapezius pain with no objective evidence of right or left
> upper extremity radiculopathy; lumbar pain with no objective
> evidence of lower extremity radiculopathy; seropositive rheumatoid
> arthritis; chronic depression; congenital cataracts; asthma; diminished
> hearing both ears since age of 7; and sinusitis.

A.R. 24.  The ALJ also noted the doctor's finding that Plaintiff did not appear to be in acute

distress throughout the evaluation process.  A.R. 24. The Court therefore finds that the ALJ

properly considered Dr. Cestkowski's opinion.

ALJ Kennett did not adopt certain postural limitations assessed by Dr. Cestkowski and that

portion of the doctor's opinion in which he assessed Plaintiff as only being able to sit for four hours

in an eight-hour workday, and stand and walk up to two hours in an eight-hour workday.  A.R. 458.

The ALJ was justified in finding that this proffered limitation was not consistent with the other

medical opinions.  Dr. Sherman, for example, found Plaintiff capable of sitting, standing and

walking for six hours in an eight-hour workday.  A.R. 349.  Similarly, Dr. Toth found Plaintiff

capable of standing or walking and sitting for six hours in an eight-hour workday.  A.R. 359.

Although ALJ Kennett did not specifically state that he rejected that portion of Dr. Cestkowski's

opinion, he stated that he "considered and gave great weight to Dr. Cestkowski, who opined the

claimant did not put forth a full cooperative effort for this evaluation based on his clinical

experience, but found light limitations." A.R. 25, 458.  An ALJ is entitled to rely on evidence of

the claimant's "poor effort" at a consultative examination when assessing limitations.  *See

Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).  The Court therefore finds that the ALJ

provided specific and legitimate reasons for declining to adopt portions of Dr. Cestkowki's opinion

and that his RFC assessment is supported by substantial evidence in the record.

Plaintiff also alleges that the crux of this case is the worsening of her condition over time.

She argues that the ALJ should have adopted Dr. Cestkowski's opinion in its entirety because he

was the last physician to examine Ms. Castro.   By referring Plaintiff for a post hearing consultative

14

1   examination, the ALJ establishes that he properly considered her alleged worsening condition.

2   Disability hearings are not adversarial in nature.  *See Dixon v. Heckler*, 811 F.2d 506, 510 (10th

3   Cir. 1987) (ALJ has basic duty to "inform himself about facts relevant to his decision).  Therefore,

4   an ALJ has a duty to develop the record in Social Security cases.  *See DeLorme v. Sullivan*, 924

5   F.2d 841, 849 (9th Cir. 1991).  This duty exists even when the claimant is represented by counsel.

6   *Id*.  Here, Plaintiff had to establish disability between the period of her alleged onset date, April 5,

7   2009, through her date last insured, September 30, 2014.  Plaintiff presented for her hearing before

8   the ALJ on June 28, 2011.  As the ALJ noted, Plaintiff began using a cane two months prior to the

9   hearing due to right knee problems.  A.R. 23.  Plaintiff was then prescribed a walker on June 29,

10  2011, one day after her hearing.  A.R. 422.  ALJ Kennett referred Ms. Castro for further testing

11  after the hearing, wherein she was examined by Dr. Cestkowski.  A.R. 451.   In doing so, pursuant

12  to *Sullivan*, ALJ Kennett met his duty to develop the record.  Having informed himself about facts

13  relevant to his decision, the ALJ applied the proper legal standard to reject portions of Dr.

14  Cestkowski's opinion.

15          **B.     The ALJ applied the appropriate legal standard in determining that Plaintiff**
              **could perform her past relevant work at step four of his analysis and his**
16            **decision is supported by substantial evidence in the record.**

17          At the fourth step, the ALJ determines whether a claimant can perform her past relevant

18  work.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).  The ALJ reviews a claimant's residual functional

19  capacity and the physical and mental demands of the work he or she has previously performed.  *See*

20  *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).  The ALJ must make findings as to the

21  physical and mental demands and the stress of the past work.  *Id*.  A claimant has the ability to

22  return to previous work if he or she can perform the "actual functional demands and job duties of a

23  particular past relevant job" or "the functional demands and job duties of the past occupation as

24  generally required by employers throughout the national economy."  *See Pinto v. Massanari*, 249

25  F.3d 840, 845 (9th Cir. 2001).  This inquiry, as to whether a claimant may perform her past relevant

26  work, does not require the use of vocational testimony.  *See Crane v. Shalala*, 76 F.3d 251, 255

27  (9th Cir. 1996).  If a claimant has the residual functional capacity to do her previous work (the

28  usual work or other applicable past work), the ALJ will determine that the claimant is not disabled.

1   *See* 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3).

2       Here, the ALJ found Ms. Castro capable of performing her past relevant work as a gift

3   wrapper.  In making this finding, he compared Plaintiff's RFC assessment with the physical and

4   mental demands of her past relevant work.  A.R. 26.  In support of his decision, ALJ Kennett

5   stated, "[t]he claimant reported she has worked as a wrapper at Bed Bath and Beyond in the

6   warehouse, from May of 2008 through May 21, 2009.  She stated she did not lift anything and

7   would stand, crouch, crawl, handle, reach, and write, type or handle small objects."  A.R. 26, 158.

8       Plaintiff argues that the ALJ erred at step four of his analysis because there was insufficient

9   vocational testimony to determine whether Plaintiff's past relevant work could be performed by an

10  individual that requires a cane.  The Court is not persuaded by this argument.  Pursuant to *Crane*,

11  the inquiry as to whether a claimant may perform her past relevant work does not require the use of

12  vocational testimony.  *See Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996).  Rather, the ALJ

13  makes that determination based on a comparison of the Plaintiff's RFC assessment and his findings

14  as to the physical and mental demands and the stress of Plaintiff's past work.  Furthermore, there is

15  sufficient evidence in the record to show that ALJ Kennett was aware of Plaintiff's use of a cane

16  when making his determination.  ALJ Kennett indicated that Plaintiff began using a cane two

17  months prior to the hearing due to right knee problems.  A.R. 23.  He further opined that she was

18  prescribed a walker on June 29, 2011 and ambulated with a walker during her post-hearing

19  orthopedic consultative examination with Dr. Cestkowski.  A.R. 24.  Therefore, the decision

20  provides sufficient support to show that Plaintiff's cane use was considered in the ALJ's analysis.

21  After review of the record and the ALJ's decision, the Court finds ALJ Kennett proffered sufficient

22  evidence to support his determination that Plaintiff could perform her past relevant work.

23                                    **CONCLUSION**

24      ALJ Kennett's decision that Plaintiff has the residual functional capacity to perform light

25  work with limitations is supported by substantial evidence in the record.  In determining Plaintiff's

26  RFC, he properly provided specific and legitimate reasons, supported by substantial evidence in the

27  record for giving great weight to Dr. Cestkowski's medical assessment.  Furthermore, ALJ Kennett

28  applied the appropriate legal standard in determining that Plaintiff could perform her past relevant

16

work and his decision is supported by substantial evidence in the record.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal and Remand (#18) be **denied**, and that the Defendant's Cross Motion to Affirm (#23) be **granted**.

## NOTICE

Under Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  Appeals may been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  Failure to file objections within the specified time or failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 8th day of July, 2014.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge

17